```
               UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
                   FORT MYERS DIVISION


SCHOOL BOARD OF LEE COUNTY, FLORIDA,

          Plaintiff,

vs.                                  Case No.  2:06-cv-198-FtM-29DNF

E.S., individually and on behalf of
B.S., a minor,

          Defendants.
_____

E.S., individually, and on behalf of
B.S., a minor,

     Third-Party Plaintiffs,

vs.

TERRY  ANDREWS,  individually,  and
ELAINE FORD, individually,

     Third-Party Defendants.
_____
```

**OPINION AND ORDER**

     This matter comes before the Court on a Report and Recommendation (Doc. #54) filed on August 27, 2007, addressing claims brought under the Individuals with Disabilities Education Act (IDEA). Both sides have filed Objections (Docs. ##55, 56) to the Report and Recommendation. The School Board also filed a Response (Doc. #57) and a Request for Oral Argument (Doc. #58). The Court reviews the Report and Recommendation *de novo*.

I.

As the Report and Recommendation states (Doc. #54, p. 5), this Court has previously ordered the Lee County School Board (the School Board) to place B.S., an autistic and language impaired child born on July 3, 1990, in a residential program which would allow him to obtain educational benefit. This order was affirmed on appeal in an unpublished decision. E.S. v. School Bd. of Lee County, Fla., 87 Fed. Appx. 711 (11th Cir. 2003)(Table).[1]

B.S. was placed in a residential program known as Heartspring in Wichita, Kansas, beginning April 14, 2003. B.S.'s educational progress and situation at Heartspring is summarized in the Report and Recommendation, Doc. #54, pp. 6-9. In 2004, the School Board determined that B.S. could be placed in a non-residential program at Diplomat Middle School (Diplomat or DMS) in Lee County, Florida, instead of Heartspring, and a May/June 2004 Individualized Education Program (IEP) proposed transferring B.S. to Diplomat. A summary of the program at Diplomat is set forth in the Report and Recommendation, Doc. #54, pp. 9-14. On November 24, 2004, the parent (E.S.) and B.S. filed a demand for a due process hearing from the proposed May/June 2004 IEP and invoked the "stay put" provisions of the IDEA allowing B.S. to remain at Heartspring.

---

[1] The educational history of B.S. was set forth in detail by the Administrative Law Judge (ALJ) in his Final Order. (Doc. #1-2, ¶¶2-39.)

The primary substantive issue at the due process hearing, in addition to various procedural issues, was whether B.S. would receive educational benefit in the non-residential program at Diplomat. In due course, an Administrative Law Judge (ALJ) issued a Final Order finding that: (1) B.S. "cannot enjoy the educational benefit of a non-residential placement, including the inherent benefits of association with mainstream students, until his maladaptive behavior is eliminated." (Doc. #1-2, ¶ 66); (2) B.S.'s "maladaptive behaviors have not been eliminated. Although the frequency of [self-injurious behavior] SIB has decreased at Heartspring, the frequency of other maladaptive behaviors has increased, and new maladaptive behaviors have emerged." (Doc. #1-2, ¶ 67); (3) "Increased or new maladaptive behaviors include elopement, dropping, aggression, property destruction, stripping, masturbation, and tantrums. [B.S.] is preoccupied with water and will create water with his own urine when desired." (Doc. #1-2, ¶ 68); and (4) "Only in a residential placement can [B.S.] receive the 24-hour consistency that is necessary for a basic floor of opportunity to make educational process [sic] in his primary educational needs for behavior modification and communication." (Doc. #1-2, ¶ 69.) The ALJ found no changed circumstances which would allow non-residential placement, and found placement at Diplomat pursuant to the May/June 2005 IEP was inappropriate and that continued placement in Heartspring was appropriate. (Doc. #1-

2, ¶¶ 71-98.)  The ALJ concluded that E.S. "showed by a preponderance of the evidence that the challenged IEP is not reasonably calculated to provide FAPE [a Free and Appropriate Public Education] to [B.S.] and does not provide a basic floor of opportunity for [B.S.] to make educational progress towards goals and objectives that are appropriate for his unique educational needs."  (Doc. #1-2, ¶ 117.)  The ALJ also found the proposed procedure for transition from Heartspring to Diplomat was inadequate and that there was no adequate behavior intervention plan.  (Doc. #1-2, ¶¶ 99-102.)

The ALJ further found that the proposed May/June 2004 IEP was developed in violation of procedural due process rights, in that the School Board: (1) Failed to provide appropriate responses to requests by E.S. for prior written notice of the IEP meeting and the proposed change in placement; (2) failed to provide or timely provide the parents with copies of the report prepared by the behavior analyst and reports of other School Board employees; (3) failed to initiate a requested Independent Educational Evaluation (IEE) or advise E.S. how to obtain an IEE; (4) failed to provide adequate notice of the May 25, 2004, IEP meeting so as to enable the parents' in person attendance; and (5) predetermined the transfer to Diplomat with an egregious paucity of evidence of changed circumstances before convening the IEP meeting.  (Doc. #1-2, ¶¶ 103-10.)

The ALJ ordered and adjudged that "[t]he challenged IEP is not reasonably calculated to provide [B.S.] with FAPE and does not adequately address [B.S.'s] unique educational needs. Placement of [B.S.] in DMS pursuant to the challenged IEP is inappropriate, and continued placement in Heartspring is appropriate." (Doc. #1-2, p. 33.)

The School Board filed the instant Complaint (Doc. #1) challenging the ALJ's Final Order (Doc. #1-2). E.S. filed a Counterclaim against the School Board for attorney fees, failure to provide B.S. a FAPE, and other claims not relevant to the IDEA claims.

## II.

The Report and Recommendation noted that, as in the earlier case, "the proper placement of [B.S.] is a very difficult decision." (Doc. #54, p. 17.) The magistrate judge concluded that while the program at Diplomat appeared to be a wonderful program for a child with autism, its value would be lost as to B.S. because it would not be reinforced with consistency throughout the Child's entire day once he leaves school. The magistrate judge concluded that the consistency of a residential placement facility was needed for B.S. to obtain educational benefit, and therefore recommended that B.S. remain in a residential facility (although not necessarily Heartspring). The magistrate judge also recommended that the claims of various procedural inadequacies be rejected, and

that the ALJ's findings to the contrary as to the procedural aspects be rejected.

### III.

Both sides object to portions of the magistrate judge's Report and Recommendation. The School Board primarily objects to the finding that the ALJ was correct as to residential placement. The parent and B.S. object to the magistrate judge's rejection of their claimed procedural deficiencies. The Court reviews the objections *de novo*.

### A. The School Board's Objections

**(1) Burden of Proof:** The School Board asserts that while the Report and Recommendation properly stated that the burden of proof was with E.S., the actual analysis of the issue of placement was fatally inconsistent and effectively placed the burden on the School Board (Doc. #56, pp. 5-10). The Court disagrees, and finds that the magistrate judge did not erroneously shift the burden of proof to the School Board. As the School Board concedes, the magistrate judge correctly stated that, as the party seeking relief, the burden was on E.S. in connection with the placement issue. (Doc. #54, p. 3.) While the Court doubts that the magistrate judge forgot this burden, there is certain language concerning what the School Board failed to prove which may be ambiguous in this regard (Doc. #54, p. 27), and this language is not adopted. The Court finds from its review of the record that

E.S. has met her burden of showing by a preponderance of the evidence that placement must continue to be in a residential facility, although not necessarily the one at Heartspring. This objection is otherwise overruled.

**(2) Denial of Access/Notice:** The School Board also objects to the magistrate judge's finding that the parent was denied access to some educational records prior to the IEP meeting, including some evaluations of B.S. (Doc. #54, p. 23), and that the School Board failed to provide notice of the IEP meeting and copies of records (Doc. #54, p. 23). The School Board wants these facts corrected even though the Report and Recommendation found no basis for relief despite these deficiencies, and thus found in its favor on the issue. (Doc. #56, pp. 10-13.) The Court concludes that the magistrate judge's factual findings are correct, and therefore this objection is overruled.

**(3) Criticism:** The School Board objects to the magistrate judge's comment in connection with the IEE issue that certain School Board conduct is not "condoned," even though the magistrate judge ruled in favor of the School Board by finding no procedural flaw by the School Board on the issue. (Doc. #56, pp. 13-14.) The Court finds no basis to sustain an objection simply because the School Board disagrees with a portion of the magistrate judge's analysis in deciding an issue in its favor. This objection is overruled.

**(4) No Cost to Parent**: The School Board states that if residential placement is ordered, it should be ordered to be provided at no cost to the Parent, rather than at the School Board's expense. The School Board states that it believes the Florida Agency for Persons With Disabilities (APD) should participate in the expense of any residential placement mandated in this case. (Doc. #56, pp. 14-15.)

The Court expresses no view on this argument concerning the APD, but will require the School Board to ensure that the placement is at no cost to the Parent, as provided for in 20 U.S.C. § 1412(a)(10)(B)(i). In other words, if there is to be a fight over payment, it is to be between the School Board and the APD, not the parent and APD.

**(5) Factual Objections**: The School Board also makes seven objections to factual findings (Doc. #56, pp. 2-4), which the Court resolves as follows:

(a) The Court agrees that the federal proceeding is a *de novo* review of the ALJ's Final Order pursuant to the IDEA. The Report and Recommendation recognized this as well (Doc. #54, p. 2.) Since nothing more is required, this objection is overruled.

(b) The Court agrees that "elopement" must be considered within the context of its definition as utilized by Heartspring. The Court finds that there is no factual inaccuracy in the statements in the Report and Recommendation that B.S.'s elopement

had increased at Heartspring (Doc. #54, p. 7) and that B.S. made educational progress at Heartspring (Doc. #54, pp. 6-7.) The objection is overruled.

(c) While the Court agrees that B.S.'s other behavioral issues must be considered in connection with the definitions of those terms, the record does not support the School Board's statements that "there is no evidence of violent behavior or conduct which creates a serious safety threat" and that "there is no evidence that those behaviors [masturbation and stripping] are depriving the Child of meaningful educational benefit." (Doc. #56, p. 3.) Both the ALJ and the magistrate judge found such evidence, and after review the Court agrees with those findings. This objection is overruled.

(d) The Court will assume that the School Board is correct that with the Medicaid Waiver the various services available to B.S. and his parents - such as respite care, personal care assistance, behavioral analysis, residential placement, and other services - "are mandatory and not dependent on the availability of funding." (Doc. #56, p. 3.) This does not change any aspect of the Report and Recommendation, and therefore the objection is overruled.

(e) The Court will accept the School Board's observation (Doc. #56, pp. 3-4) that while no one from Heartspring proposed B.S. be moved to Lee County, as stated in the Report and Recommendation

(Doc. #54, p. 14), the Heartspring staff ultimately took a neutral position as to the placement of B.S. and had no first-hand knowledge of the Lee County facilities. This does not change the findings in the Report and Recommendation or the Court's view that these findings as to placement are correct. The objection is overruled.

(f) The School Board objects to the Report and Recommendation finding that "The Parent never received access to the Child's educational records prior to the IEP meeting." (Doc. #54, p. 23.) Finding the statement to be supported by the record, the Court overrules the objection.

(g) The Report and Recommendation stated that E.S. testified she received notice of the May, 2004 IEP meeting from Heartspring, and the notification was too close to the meeting for her to attend in person as she wished, and she could only attend by telephone. (Doc. #54, p. 23.) The School Board asserts that E.S. admitted on cross examination that she does not remember whether she got a written notice of the May 25, 2004 IEP meeting, and did not deny receiving it. The Court will accept this testimony, but it does not change the accuracy of the factual determinations in the Report and Recommendation. The Court adopts those factual findings and overrules the objection.

**B.   E.S. and B.S.'s Objections**

E.S. also objects to portions of the Report and Recommendation, focusing upon the procedural defects found by the ALJ but rejected by the magistrate judge.

**(1) Standard of Review:**  E.S. asserts that the magistrate judge improperly substituted his judgment for that of the ALJ. E.S. also asserts that a court may not enter an order inconsistent with the ALJ's credibility determinations without personally hearing the live testimony of the witnesses whose testimony is determinative.  The Court overrules these objections.

The Report and Recommendation set forth the proper standard to be used in evaluating the factual findings by an ALJ.  (Doc. #54, pp. 3-4, citing Board of Educ. v. Rowley, 458 U.S. 176, 206 (1982) and M.M. v. School Bd. of Miami-Dade, 437 F.3d 1085, 1097 (11th Cir. 2006)).  "[T]he district court judge conducts an *entirely de novo* review of the ALJ's findings, [ ] and has discretion to determine the level of deference it will give to the ALJ's findings."  School Bd. of Collier County v. K.C., 285 F.3d 977, 982-83 (11th Cir. 2002)(emphasis in original)(internal citations omitted).  Nothing prevents a district judge from factfinding in IDEA cases.  M.T.V. v. Dekalb County Sch. Dist., 446 F.3d 1153, 1155 (11th Cir. 2006).  Thus, there is no rule in the IDEA context that an ALJ's credibility findings must be accepted unless the reviewing judge personally rehears live testimony of the witness.

E.S.'s reliance on such a rule in the context of an evidentiary hearing before a magistrate judge which is reviewed by a district judge is not controlling since that rule is premised on the interpretation of a different federal statute. E.g., Amlong & Amlong, P.A. v. Denny's Inc., 500 F.3d 1230, 1244-46 (11th Cir. 2006).

**(2) Meaningful Input into IEP Meeting**: E.S. asserts that she was not allowed to have meaningful input into the May/June 2004 IEP meeting, and the magistrate judge erred in finding to the contrary. The magistrate judge correctly stated that

> [a]n IEP will not be automatically rendered legally defective if it contains procedural flaws. [ ] An IEP will be set aside for procedural violation only if there is a rational basis to believe that the procedural inadequacies have compromised the student's right to an appropriate education, or have seriously hampered the parents' opportunity to participate in the formulation of the IEP or caused a deprivation of educational benefits. [ ] The parents bear the burden of proving that the procedural flaw harmed the child.

(Doc. #54, p. 20)(internal citations omitted). After summarizing the claims of lack of timely notice of the May 25, 2004 IEP meeting and the failure to provide all of B.S.'s requested educational records, the magistrate judge stated that "[t]he Parent must show that she was hampered in her ability to participate in the formation of the IEP." (Doc. #54, p. 22.) The magistrate judge then accepted testimony establishing that E.S. received notice of the May 25, 2004 IEP meeting only when someone from Heartspring called her very close in time to the meeting; that while she wanted

to be physically present at the meeting, she was unable to do so because of the lack of sufficient notice; that she appeared at the May meeting by telephone; that there were telephone problems during the meeting, and communication was lost for 20-30 minutes; that she did not receive any reports prior to the May meeting; that she did attend the June 25, 2004 IEP meeting in person; that she never received access to B.S.'s education records prior to the IEP meeting, and that some of the omitted records were evaluations of B.S. (Doc. #54, p. 23.) Despite these procedural shortcomings, the magistrate judge found that "it is clear that the Parent participated in both the May and June 2004 IEP meetings. The Parent's concerns were listed in the proposed IEP. [ ] The Parent was concerned about consistency in [B.S.]'s education and she wanted him to continue making progress. [ ] The Court does not condone the actions of the School Board by not providing notice and copies of the records, however, there was no evidence that the Parent or S.S. [B.S.'s father] was hampered in their ability to participate fully in the IEP meeting." (Doc. #54, p. 23.)

The Eleventh Circuit has rejected an argument that a violation of the notice requirement is a *per se* violation of IDEA which by itself constitutes a denial of FAPE. Doe v. Alabama State Dep't of Educ., 915 F.2d 651, 660-663 (11th Cir. 1990); Weiss by & Through Weiss v. School Bd. of Hillsborough County, 141 F.3d 990, 994 (11th Cir. 1998). The Court held that no relief was required where the

parents fully participated in the IEP process and there was no harm flowing from the procedural violation. Doe, 915 F.2d at 663. The Court's review of the record establishes that E.S. fully participated in the IEP process and there was no harm flowing from the procedural violations. This is not to say that E.S. prevailed as to her wishes in connection with the IEP; she obviously did not. But she was a full participant in the process despite the procedural violations, and the deficiencies (from her perspective) of the resulting IEP did not flow from the procedural violations. This objection is overruled.

**(3) Pre-Determination of B.S.'s Placement**: E.S. asserts that the School Board pre-determined that B.S. would be placed at Diplomat prior to the IEP meeting and pre-determined a portion of the content of the IEP, an issue not addressed in the Report and Recommendation. The record does not support such a claim, and the objection is overruled.

**(4) Failure to Provide Independent Educational Evaluation (IEE)**: E.S. asserts that on October 8, 2004, her attorney requested an IEE. Faced with such a request, E.S. asserts that the School Board had to (a) provide its criteria for an IEE and information about where E.S. could obtain an IEE; and (b) either (i) ensure that the IEE was provided at no cost to E.S., or (ii) initiate a due process hearing to show either that the School Board's evaluation was appropriate or the E.S.'s IEE did not meet

the School Board's criteria. E.S. asserts that the School Board did not provide information to E.S. until February 2005, declined to pay for the IEEs that E.S. proposed, failed to provide written notice, and did not request a due process hearing, all violations of her rights.

As the Report and Recommendation correctly summarized (Doc. #54, pp. 24-25), E.S.'s October 8, 2004 letter simply requested "independent evaluations," without specifying what evaluations were being sought. The School Board responded by letter, asking counsel to specify the evaluations being requested. It was not until the November 24, 2004 due process hearing demand letter from E.S.'s counsel that he identified seven specific evaluations and a catchall evaluation which were being requested. When the School Board did attempt to arrange an IEE, the parties could not agree on the evaluator.

The Court agrees with the magistrate judge that E.S.'s initial request for "independent evaluations" was too vague to trigger any obligation concerning an IEE by the School Board. As the numerous evaluations requested on November 24 exemplified, the School Board's request for clarification was both reasonable and necessary, and was not a procedural violation. The Court rejects E.S.'s waiver argument (Doc. #55, p. 11) as having no support from any binding precedent. The Court also rejects the ALJ's view that a mere request for an IEE triggers the right to have the School

Board comply with the request or seek a due process hearing. Rather, if the School Board does not comply with the request, the burden is upon E.S. to present a complaint pursuant to 20 U.S.C. § 1415(b)(6), and to request a due process hearing pursuant to 20 U.S.C. § 1415(f)(1). The Court overrules this objection.

**(5) Failure to Provide PWN**: E.S. argues that a prior written notice (PWN) was required when the School Board proposed to change B.S.'s placement, and that the School Board failed to provide appropriate responses to requests for PWNs concerning E.S.'s request for an IEP meeting, request for an IEE, and the proposed change in educational placement. E.S. objects to the magistrate judge's contrary finding. For the reasons set forth in the Report and Recommendation (Doc. #54, pp. 22-23) the Court overrules this objection.

**(6) Procedural Flaws in the IEP**: E.S. asserts that the IEP was procedurally flawed in a number of ways. The Court finds that the record supports the findings and conclusions of the magistrate judge as to these issues. (Doc. #54, pp. 23-27.) The objections are overruled.

Accordingly, it is now

**ORDERED:**

1. The Report and Recommendation (Doc. #54) is **ACCEPTED AND ADOPTED,** with the exception of the language on page 27 noted above, as supplemented by the Opinion and Order.

    2.  As to the Complaint (Doc. #1), the Court finds in favor of E.S. individually and on behalf of B.S. as to the requirement of residential placement of B.S. at no cost to E.S., and finds in favor of the School Board as to the alleged denial of FAPE based on procedural deficiencies.

    3.  As to Count I of the Counterclaim, the Court finds in favor of E.S. individually and on behalf of B.S. as the prevailing party on the predominant issue concerning the placement of B.S.  A motion for attorney fees and costs may be filed within **THIRTY (30) DAYS** of this Opinion and Order.

    4.  As to Count II of the Counterclaim, the Court finds in favor of E.S. individually and on behalf of B.S. as to the placement in a residential facility, and for the School Board as to the alleged procedural deficiencies.

    5.  The magistrate judge shall enter a scheduling order as to the remaining outstanding claims, including the filing of a response to the School Board's Motion to Dismiss Counterclaim and Third-Party Defendants' Motion to Dismiss Third Party Claims (Doc. #28).[2]

    6.  The Request for Oral Argument (Doc. #58) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this __10th__ day of March, 2008.

JOHN E. STEELE
United States District Judge

---

[2] The Motions (Docs. ##28, 30), previously deferred by Order (Doc. #53) on August 22, 2007, are no longer deferred based on the entry of this Opinion and Order.

Copies:
Hon. Douglas N. Frazier
Counsel of record